IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:10-CV-00062-FL

| | | |
|---|---|---|
| MATCH FACTORS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICKEY B. HENSON ENTERPRISES, | ) | |
| INC., *d/b/a Appalachian* | ) | |
| *Environmental Services*, MICKEY B. | ) | |
| HENSON, and DEVELOPERS SURETY | ) | |
| AND INDEMNITY COMPANY, | ) | |
| | ) | |
| Defendants, | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| And, | ) | |
| | ) | |
| DEVELOPERS SURETY AND | ) | |
| INDEMNITY COMPANY, | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| REBECCA A. HENSON, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

This matter is before the Court on: (1) Defendant Mickey B. Henson Enterprises, Inc.

*d/b/a Appalachian Environmental Services* and Defendant Mickey B. Henson's First Motion to

Dismiss [DE-18]; (2) Defendant Developers Surety and Indemnity Company's Motion to

Dismiss [DE-22]; (3) Defendant Mickey B. Henson Enterprises, Inc. *d/b/a Appalachian*

*Environmental Services* and Defendant Mickey B. Henson's Second Motion to Dismiss [DE-24];

(4) Plaintiff Match Factors, Inc.'s Motion to Dismiss Counterclaims [DE-28]; and (5) Third-

Party Defendant Rebecca A. Henson's Motion to Dismiss [DE-39]. All appropriate responses and replies have been filed and the five motions to dismiss are presently ripe for review. Accordingly, Chief Judge Flanagan has referred all of the above motions to the undersigned Magistrate Judge for a memorandum and recommendation.

## STATEMENT OF THE CASE

On April 13, 2010, Plaintiff Match Factors, Inc. ("Plaintiff") filed a Complaint [DE-1] against (1) Mickey B. Henson Enterprises, Inc. *d/b/a Appalachian Environmental Services* ("AES"); (2) Mickey B. Henson ("Mr. Henson"); and (3) Developers Surety and Indemnity Company ("DSIC"). In the complaint, Plaintiff alleged the following causes of action: (1) breach of contract against AES; (2) breach of a payment bond obligation against DSIC; and (3) tortious interference with contractual relations and unfair and deceptive trade practices against AES and Mr. Henson. DSIC filed an Answer [DE-6] on May 11, 2010, which also asserted crossclaims against Mr. Henson and AES as well as counterclaims against Plaintiff. On May 25, 2010, DSIC filed a Third Party Complaint [DE-14] against Rebecca A. Henson ("Ms. Henson").

On June 8, 2010, in lieu of an answer, Mr. Henson and AES filed a joint Motion to Dismiss [DE-18]. In it, they argued that Plaintiff's complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3) for improper venue, or, in the alternative, pursuant to Rule 12(b)(7) for failure to join a required party as required by Rule 19. Mr. Henson and AES also filed a Second Motion to Dismiss [DE-24] on June 21, 2010. In it, they acknowledged the crossclaims filed by DSIC and reasserted the grounds of their previous motion to dismiss—Rules 12(b)(3) and 12(b)(7)—as a basis for dismissal of the crossclaims as well.

On June 17, 2010, DSIC filed a separate Motion to Dismiss [DE-22]. This motion set forth substantially similar grounds to the motions filed by Mr. Henson and AES, also arguing for dismissal pursuant to Rules 12(b)(3) and 12(b)(7).

On June 22, 2010, Plaintiff filed a Motion to Dismiss Counterclaims [DE-28] in response to the counterclaims filed by DSIC. In it, Plaintiff argued that the counterclaims should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim on which relief may be granted. On August 6, 2010, DSIC filed a Response in Opposition [DE-44] to Plaintiff's motion and Mr. Henson, Ms. Henson, and AES (collectively "the Henson defendants") also filed a joint Response in Opposition [DE-46]. On August 23, 2010, Plaintiff filed a Reply [DE-50], collectively addressing the responses filed by the Henson defendants and DSIC.

On July 23, 2010, Ms. Henson filed a Motion to Dismiss [DE-39]. In it, she argued that Rules 12(b)(3) and 12(b)(7) served as a basis for dismissal of not only the original claims filed by Plaintiff against Mr. Henson, AES, and DSIC, but also of the third party claims that DSIC had filed against her. On August 13, 2010, DSIC filed a Memorandum of Law in Response [DE-48] to Ms. Henson's motion to dismiss, as well as the motions to dismiss filed by Mr. Henson and AES.[1]

On July 23, 2010, Plaintiff filed a Response in Opposition [DE-41], which collectively addressed all of the motions to dismiss that had been separately filed by Mr. Henson and AES, DSIC, and Ms. Henson. DSIC filed a Reply [DE-45] to Plaintiff's collective response on August 6, 2010 and the Henson defendants filed a joint Reply [DE-49] on August 23, 2010.

---

[1] DSIC notes in this response that, if any of the defendants' motions to dismiss were to be granted by the Court, it would not object to dismissal of its own crossclaims against AES and Mr. Henson and its third party complaint against Ms. Henson, without prejudice.

## STATEMENT OF FACTS

Ms. Henson is the President and Mr. Henson is the Vice President of AES, an environmental contractor. AES entered into a contract ("the Contract") with the State of North Carolina Department of Environmental and Natural Resources Environmental Enhancement Program to improve the Adkin Branch Stream in Kinston, North Carolina ("the Project"). In conjunction with the Project, DSIC provided a payment bond on AES' behalf.

In order to carry out the Contract, AES also entered into a subcontract ("the Subcontract") with a company called Whitehead Trucking, Inc. ("Whitehead") to haul dirt, tree debris and rock away from the Project. Whitehead then entered into a factoring agreement ("the Factoring Agreement") with Plaintiff whereby Whitehead was entitled to factor, sell and assign its accounts receivable to Plaintiff, which Plaintiff purchased at a discount. Plaintiff and Whitehead sent AES a notice of assignment providing notice of the Factoring Agreement and the direction that all payments formerly due to Whitehead would be payable to Plaintiff going forward. AES executed a written acknowledgement of the notice of assignment on May 12, 2009.

Subsequently, Whitehead performed services under the Subcontract and Plaintiff alleges that it factored certain invoices for these services pursuant to its agreement with Whitehead. These verified factored invoices were then presented to AES for payment. However, disputes began to arise between AES and Plaintiff with regard to the payments due, and as a result, on September 1, 2009, AES and Plaintiff executed a dispute resolution letter agreement ("the Letter Agreement"). The Letter Agreement set out a schedule for payment of all open verified factored

4

invoices but provided that all future invoices payable to Plaintiff would be payable in accordance with existing agreements.[2]

## DISCUSSION

### I.     Mr. Henson and AES' First Motion to Dismiss

Mr. Henson and AES jointly filed two separate motions to dismiss. However, the arguments in both of these motions are virtually identical and the only difference is that the second motion acknowledges the existence of crossclaims filed by DSIC and asserts Rules 12(b)(3) and 12(b)(7) as a basis for dismissal for them as well as for the original claims in the complaint. Accordingly, the Court recommends that Mr. Henson and AES' first motion to dismiss be denied as moot.

### II.    Motions to Dismiss on behalf of Mr. Henson and Ms. Henson

On January 3, 2011, the Court took judicial notice of a bankruptcy petition filed in the United States Bankruptcy Court for the Western District of North Carolina by Mr. Henson and Ms. Henson. Based on this bankruptcy filing, the Court stayed the instant action as to any claims asserted against Mr. Henson and Ms. Henson. Accordingly, the Court recommends that Mr. Henson and AES' second motion to dismiss be stayed as to Mr. Henson and that Ms. Henson's motion to dismiss be stayed in its entirety.

### III.   Motions to Dismiss on behalf of AES and DSIC

As a result of the automatic stay, the only defendants that are left with motions to dismiss on which the Court may rule at this time are AES and DSIC. AES and DSIC have made nearly identical arguments in their motions to dismiss, and therefore, the Court will address their motions together and refer to them collectively as "Defendants" during its discussion.

---

[2] The contents and scope of the Letter Agreement appear to be disputed by the parties; however, further discussion of its application is not necessary to the Court's resolution of the instant motions and will be omitted here.

## A. Defendants' Motions to Dismiss pursuant to 12(b)(3)

### 1.    Arguments of the parties

Defendants argue that Plaintiff's right to payment, if any, derives from Whitehead's contractual right to payment, necessarily arises out of its rights as Whitehead's assignee, and therefore remains subject all the terms and conditions of the Subcontract between Whitehead and AES. Among its terms, the Subcontract contains the following forum selection clause:

> Any claim, dispute or other matter in question between the Contractor and the Subcontractor relating to this Agreement shall be governed by the laws of the state of North Carolina, for any and all causes of action arising under this Subcontract shall be in the [sic] Jackson County of North Carolina and Subcontractor hereby waives any right it may have to the selection of venue in any other County.

Elaine Carter Affidavit Ex. A at 16 [DE-18-2]. Defendants argue that this forum selection clause lays exclusive venue in the *state* courts of Jackson County and is mandatory because it contains the word "shall." As a result, because of Plaintiff's status as Whitehead's assignee and the language of the Subcontract's forum selection clause, Defendants contend that venue in this Court is improper and that the complaint should be dismissed pursuant to Rule 12(b)(3).

In response, Plaintiff argues that the contract and bond claims asserted in the complaint do not arise *solely* under the Subcontract, and that therefore they are not necessarily subject to the forum selection clause. Instead, Plaintiff contends that the contract claim against AES also arises out of the Letter Agreement made directly between Plaintiff and AES, and that when Plaintiff notified DSIC of the claim on the bond, it explicitly referenced the Letter Agreement. Plaintiff therefore argues that its contract and bond claims against AES and DSIC, respectively, are in fact based in large part on AES' failure to pay the disputed invoices mentioned in the terms of the Letter Agreement, and not solely on Plaintiff's rights as Whitehead's assignee under the Subcontract.

6

Similarly, Plaintiff argues that its tort claims against AES also do not arise solely under the Subcontract. Instead, Plaintiff claims that after the execution of the Letter Agreement, AES made payments directly to Whitehead, even though AES still owed amounts to Plaintiff on the verified factored invoices that were the subject of the Letter Agreement. Plaintiff alleges that AES made these payments to Whitehead despite acknowledging multiple times that all payments should be made directly to Plaintiff and that Whitehead accepted these payments in violation of the Factoring Agreement between Plaintiff and Whitehead. As a result, Plaintiff argues that its claims for tortious interference with contractual relations and unfair and deceptive trade practices against AES in the instant action, which arise out of these allegedly erroneous payments, are based on facts relating to the Factoring Agreement and not the Subcontract.

In sum, Plaintiff believes that Defendants' assumption that the instant action arises solely out of its rights as Whitehead's assignee is in error; rather, it contends that all four of its claims for relief also arise out of the Letter Agreement and/or the Factoring Agreement. Thus, Plaintiff argues, it might not be required to rely on its status as Whitehead's assignee *at all* in this action for any part of its claims and therefore, the claims do not necessarily arise under the Subcontract and would not be subject to its provisions, including the forum selection clause. Instead, Plaintiff argues that it is free to lay venue anywhere that it is otherwise proper and that venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and N.C. Gen. Stat. § 44A-28 (the "Little Miller Act") because complete diversity exists and all or part of the underlying construction contract at issue in this case is or has been performed in Lenoir County, North Carolina, a county within this District.

In addition, Plaintiff also argues in the alternative that, even if the Court were to determine that some aspects of its claims were derived entirely from its status as Whitehead's

assignee and thus were subject to the forum selection clause in the Subcontract, that the Court should transfer this entire action to the Western District of North Carolina in lieu of granting Defendants' motion to dismiss. Plaintiff bases this request on a belief that the forum selection clause was intended to represent a geographic restriction of convenience as opposed to a jurisdictional choice of state over federal court. Accordingly, Plaintiff believes that Defendants have not shown that dismissal is appropriate over transfer to the Western District, within which Jackson County is located. Plaintiff also briefly argues that, even if dismissal were required over transfer, dismissal would only be appropriate for those claims that the Court found to arise out of its status as Whitehead's assignee.

In DSIC's reply to Plaintiff's response, DSIC takes issue with Plaintiff's contention that some of its claims arise not only out of the Subcontract but also the Letter Agreement. Instead, DSIC believes that the Letter Agreement between Plaintiff and AES is not an agreement for the providing of labor or materials to the Project and thus is not covered by the DSIC payment bond. Therefore, DSIC contends that because Plaintiff did not supply any labor or materials to the Project, Plaintiff has no direct claim against the payment bond issued by DSIC and, but for the existence of the Subcontract, Plaintiff could not maintain any cause of action whatsoever against DSIC. DSIC also reiterates its argument that the forum selection clause is mandatory and lays venue exclusively in the state courts of Jackson County.

AES makes two arguments in its reply to Plaintiff's response. First, AES challenges Plaintiff's proposition that it would be proper to dismiss only some of the claims in the instant case, instead arguing that, because the defendants had no control over how Plaintiff combined its claims, it would be unfair to prejudice their rights to enforce the forum selection clause by finding that Plaintiff could defeat its exercise merely by "dreaming up" an unrelated claim.

8

Second, though conceding that the Little Miller Act would make venue in this Court proper absent the forum selection clause, AES argues that courts have consistently interpreted this statute's provisions to be for the convenience of the parties, and thus waivable. By virtue of the forum selection clause, AES argues that Plaintiff waived its right to demand that this matter be litigated in this Court.[3]

### 2. Court's discussion

#### a. Availability of venue in this Court and its waivability

The Little Miller Act governs suits on payment bonds in North Carolina and lays venue for such actions in a "court of appropriate jurisdiction in a county where the construction contract or any part thereof is to be or has been performed." N.C. Gen. Stat. § 44A-28(a). Here, the Project was in the town of Kinston, North Carolina, which lies in Lenoir County, a county within the Eastern District of North Carolina. Therefore, because complete diversity exists in this action, venue would generally be proper in this Court. Defendants do not dispute this conclusion, but rather assert that the venue provision of the Little Miller Act is waivable.

The Little Miller Act is substantially similar to the Miller Act, 40 U.S.C. § 3131, a related federal statute, and North Carolina state courts generally have applied rulings of federal courts on the Miller Act when analyzing Little Miller Act issues. *See, e.g., Syro Steel Co. v. Hubbell Highway Signs, Inc.*, 424 S.E.2d 208, 211 (N.C. Ct. App. 1993). Pursuant to this practice, Defendants have cited federal case law in support of their proposition that the parties have waived the right to lay venue in this District. *See, e.g., U.S. ex rel. Coken Co., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2003 WL 22937731, at *2 (M.D.N.C. Dec. 2, 2003). Plaintiff does not dispute that the Little Miller Act's venue provision is waivable, but rather argues that the Subcontract's forum selection clause does not apply to its claims and that thus, no

---

[3] DSIC also had made this latter argument in its previously filed motion to dismiss.

waiver has occurred. Therefore, not being independently aware of any proof to the contrary, the Court accepts Defendants' contention that the venue provision of the Little Miller Act is waivable.

Accordingly, the Court notes that Plaintiff is correct that venue would be proper in this Court but that such venue is waivable and proceeds to the question of whether the forum selection clause applies to waive laying of venue in this Court.

### b. Applicability of forum selection clause to Plaintiff's claims

In addition to the forum selection clause, the Subcontract contains the following provision: "This contract shall be binding upon and shall insure [sic] to the benefit of the parties hereto and their heirs, successors and assigns." Elaine Carter Affidavit Ex. A at 17. There does not appear to be any dispute that Plaintiff was Whitehead's assignee. Therefore, as a general matter, the Court finds that the provisions of the Subcontract are binding upon Plaintiff as Whitehead's assignee.

However, Plaintiff argues that none of its claims in the instant action *necessarily* arise under the Subcontract and thus its status as Whitehead's assignee. Instead, though conceding that the contract claim against AES and the bond claim against DSIC do arise under the Subcontract, Plaintiff argues that they also arise under the Letter Agreement between Plaintiff and AES. Similarly, Plaintiff argues that the two tort claims against AES arise primarily out of the Factoring Agreement between Plaintiff and Whitehead. As a result, Plaintiff contends that all four of its claims have a basis independent of the Subcontract and that therefore it is not bound by its forum selection clause.

The Court notes that the parties appear to agree that the forum selection clause would be applicable to any claims arising exclusively under the Subcontract. Instead, the contested issue

is whether Plaintiff's claims in this action are based only on its status as Whitehead's assignee and therefore arise *solely* under the Subcontract. To that end, the Court agrees with Plaintiff that the two tort claims against AES arise primarily out of the Factoring Agreement. The tortious interference with contractual relations claim alleges that AES interfered with the contractual relations between Plaintiff and Whitehead, which could only implicate the Factoring Agreement. Similarly, the unfair and deceptive trade practices claim appears to also relate to how AES approached the relationship between Plaintiff and Whitehead, which would arise out of the Factoring Agreement as well. In addition, the Court will assume, without finding, that the contract claim against AES arises out of the Letter Agreement as well as the Subcontract. However, the Court does *not* agree with Plaintiff that the bond claim against DSIC arises not only out of the Subcontract but also independently out of the Letter Agreement. Rather, the Court finds that the bond claim arises *solely* out of Plaintiff's rights as an assignee under the Subcontract and that therefore it is subject to the forum selection clause.

Plaintiff argues that, since the contract claim against AES arises out of the Letter Agreement and Plaintiff referenced the fact that AES had failed to pay in accordance with the Letter Agreement when it notified DSIC of its claim on the bond, the bond claim therefore also arises out of the Letter Agreement. Though this argument is somewhat convoluted, it appears to the Court that Plaintiff is contending that because it only seeks payment on the bond for the disputed invoices that were referenced in the Letter Agreement, the bond claim on the disputed invoices therefore arises out of the Letter Agreement in addition to the Subcontract, whereas a bond claim on undisputed invoices would arise only under the Subcontract.

The Court disagrees with this argument. Even assuming, without finding, as stated above, that Plaintiff's contract claim against AES arises out of the Letter Agreement in addition

11

to the Subcontract, merely referencing the Letter Agreement in the notification to DSIC of the claim on the bond is insufficient in and of itself to cause the bond claim to also arise under the Letter Agreement. In addition, as DSIC correctly points out, because Plaintiff did not personally provide labor or materials to the Project, it has no direct claim against the bond and must therefore rely on the Subcontract. Whether Plaintiff was seeking a bond payment on only disputed or both disputed and undisputed invoices should not operate to alter the applicability of the Subcontract's terms and conditions. Rather, the Court finds that Plaintiff's right to payment on the bond claim, if any, ultimately derives from Whitehead's right to payment on the bond claim under the Subcontract, which Plaintiff inherited as Whitehead's assignee.[4]

Accordingly, the Court finds that Plaintiff's bond claim arises solely out of the Subcontract and thus is subject to all the terms and conditions of the Subcontract including the forum selection clause and proceeds to the question of whether the forum selection clause is generally enforceable.

### c. Enforceability of forum selection clause generally

Rule 12(b)(3) permits a court to dismiss an action for improper venue. Fed. R. Civ. P. 12(b)(3). In the Fourth Circuit, venue objections based on forum selection clauses may properly be raised under this rule. *Sucampo Pharm., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 549-50 (4th Cir. 2006). Forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). A forum selection clause will be unreasonable if: (1) its formation was induced by fraud or overreaching; (2) the complaining party would be deprived of their day in court because of grave inconvenience or unfairness; (3)

---

[4] The Court also notes that, by arguing for transfer of this action in lieu of dismissal, Plaintiff essentially concedes that the Court might well find that its contract and bond claims arise solely under the Subcontract.

the chosen law would deprive plaintiff of a remedy; or (4) enforcement would contravene the strong public policy of the forum state. *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996) (citations omitted).

Here, neither party argues that the forum selection clause is improperly contested in this action or that it is unenforceable and the Court sees no independent problem with the clause under *Sucampo*, *M/S Bremen*, or *Allen*. Accordingly, the Court finds that the forum selection clause is enforceable generally and proceeds to the question of whether the forum selection clause requires dismissal of the instant action or allows for transfer to the Western District of North Carolina.

### d. Interpretation of forum selection clause

Defendants argue that the Subcontract's forum selection clause applies to lay exclusive venue in state court and that thus, the Court must dismiss this action in its entirety for improper venue. In response, Plaintiff makes two alternative arguments. First, Plaintiff contends that the forum selection clause allows for venue in either state or federal court and that therefore the Court has discretion to transfer the entire action to the Western District of North Carolina in lieu of granting Defendants' motions to dismiss. Second, Plaintiff briefly argues that even if the forum selection clause lays venue exclusively in state court, the Court is only required to dismiss those claims which arise solely under the Subcontract and thus are necessarily subject to the forum selection clause.

### i. Appropriateness of transfer in lieu of dismissal

Generally, when one federal district court grants a 12(b)(3) motion, it has discretion, in lieu of dismissal, to instead transfer the matter to another federal district. 28 U.S.C. § 1404(a). However, transfer is only possible to a federal district in which venue is otherwise proper. *Id.*

Here, the parties disagree as to whether the proposed location of transfer, the Western District of North Carolina, is such a proper venue and thus, whether the forum selection clause permits transfer or requires dismissal.

The relevant portion of the forum selection clause in the instant action indicates that "causes of action arising under this Subcontract shall be in the [sic] Jackson County of North Carolina." The clause also provides that disputes "shall be governed by the laws of the state of North Carolina" and that Whitehead "waives any right it may have to the selection of venue in any other County." The clause does not specify whether an action may or may not be brought in federal court. Jackson County is located within the geographic boundaries of the Western District of North Carolina. Therefore, Plaintiff argues that venue is proper in the Western District, as the federal court having jurisdiction over that county, and that transfer is appropriate in lieu of dismissal. Conversely, Defendants argue that the phrase "in the Jackson County" lays exclusive venue in the *state* courts of Jackson County and that dismissal of the action is warranted on that basis.

In analyzing a forum selection clause, a court must determine both whether the clause is mandatory or permissive and whether the limitation provided for by the clause is geographic or jurisdictional in scope. *See, e.g., Unistaff, Inc. v. Koosharem Corp.*, 667 F.Supp.2d 616, 618-19 (E.D. Va. 2009); *Silo Point II LLC v. Suffolk Constr. Co., Inc.*, 578 F.Supp.2d 807, 810 (D. Md. 2008). There does not appear to be a dispute between the parties that the clause here is mandatory and the Court independently finds that its use of the word "shall" is unequivocal. However, federal courts across the country are divided on the question of whether a forum selection clause laying venue "in" a county is a jurisdictional clause which lays venue exclusively in the state courts of that county or a geographic clause which *also* authorizes venue

in the federal district court having jurisdiction over that county. In addition, to complicate matters further, courts have reached different conclusions as to the scope of geographic clauses depending on whether there is a federal courthouse physically located in the county referenced. Here, the forum selection clause lays venue "in" Jackson County, a county within the Western District in which no federal courthouse is physically located. Therefore, whether transfer is appropriate in lieu of dismissal in the instant action hinges on the resolution of a very specific question: is venue proper in the federal district court having jurisdiction over a particular county when a forum selection clause lays venue "in" that county but no federal courthouse is physically located within it?

The closest that the Fourth Circuit has come to addressing this issue was in the 2003 case of *Ferri Contracting Co. v. Town of Masontown*. 2003 WL 22244905, at *1 (4th Cir. Sept. 29, 2003) (unpublished). In *Ferri*, the Fourth Circuit held that a forum selection clause mandating litigation "in a court [ ] within the state [of West Virginia]" did not preclude venue in federal district court. *Id.* at *2. The court considered whether the restriction was geographic or jurisdictional and found it to be geographic because it was clear there were federal courts within West Virginia, and all that the clause said was "in West Virginia," not "of West Virginia." *Id.* at *1. Though *Ferri* was an unpublished decision, the Court nonetheless finds it appropriate to consider the clause in the instant action to be geographic in nature pursuant to the holding in *Ferri*. However, because *Ferri* did not resolve whether a geographic restriction would preclude venue in federal court if no federal courthouse physically existed within the boundary set by the forum selection clause, further inquiry into the matter is warranted.

That question *was* explicitly addressed several years later in the Eastern District of Virginia by *Nahigan v. Juno-Loudoun, LLC.*, 661 F.Supp.2d 563, 566-69 (E.D. Va. 2009). In

*Nahigan*, which involved a motion to remand an action that had been removed to federal district court, the court interpreted the Fourth Circuit's holding in *Ferri* to support upholding federal venue when the clause at issue read "the sole venue for any litigation shall be Loudoun County, Virginia." *Id.* at 568. Though no federal court physically sat in Loudon County, the *Nahigan* court reasoned that geographic restrictions permitted venue in "all courts having jurisdiction over that area," not only courts physically located within the specified boundary. *Id.* The *Nahigan* court also found persuasive the fact that the forum selection clause at issue contained no reference to a specific court, court system, or sovereign. *Id.*

However, the decision in *Nahigan* was not followed by the only other court within the ambit of the Fourth Circuit to consider the issue since its publication. In *Rihani v. Team Express Distrib., LLC*, the District of Maryland addressed a question virtually identical to the issue in the instant case. 711 F.Supp.2d 557, 558-561 (D. Md. 2010). There, the forum selection clause stated that the parties' agreement would "be governed by and construed according to the laws of the State of Maryland, and venue for all actions . . . shall be irrevocably set in Howard County, Maryland." *Id.* at 558. The plaintiff in *Rihani* had filed suit in federal district court and the defendant was seeking dismissal based on the assertion that the only proper venue under the clause would have been a state court in Howard County, Maryland. *Id.* at 559. The *Rihani* court acknowledged a split in federal authority on the question and proceeded to analyze the holding in *Nahigan* at some length, ultimately disagreeing with its conclusions. *Id.* at 560-61. The *Rihani* court did agree with *Nahigan*'s finding that, pursuant to the Fourth Circuit's reasoning in *Ferri*, "in Howard County" would constitute a geographic and not a jurisdictional limitation. *Id.* at 561. However, the *Rihani* court also found that this operated to prohibit venue in any court not physically located in Howard County. *Id.* To that end, the *Rihani* court reasoned that *Nahigan*

had relied implicitly on one of two unacceptable premises: (1) that "the sole venue shall be Loudoun County" actually meant "the sole venue shall be Loudoun County or a court with venue over Loudoun County," or (2) that a geographic forum selection clause could not also create a *de facto* sovereignty limit. *Id.* Rather, the *Rihani* court found that giving the forum selection clause at issue its plain meaning meant that it prohibited venue in any court sitting outside the geographic boundary of Howard County and, accordingly, because there was no federal courthouse physically within Howard County, prevented suit from being filed in Maryland District Court. *Id.*

The Court finds *Rihani* to be factually more similar to the instant case. Unlike *Nahigan*, *Rihani* involved a defendant's motion to dismiss a complaint that had originally been filed in federal court as opposed to a plaintiff's motion to remand. In addition, the forum selection clause in *Rihani* was substantially identical to the one at issue here, particularly in its use of the word "in" and its reference to the laws of the state in which the county was located. However, even more importantly than these factual similarities, the Court is more persuaded by the *Rihani* court's reasoning. Like the *Rihani* court, this Court does not agree with the *Nahigan* court's implicit assumptions that either grafting language onto a forum selection clause or interpreting it to preclude a jurisdictional limitation on which it is otherwise silent is appropriate. Accordingly, the Court finds that here, the Subcontract's forum selection clause, by requiring litigation "in the Jackson County," lays venue exclusively in the state courts of Jackson County, North Carolina. The Court acknowledges that numerous federal district courts across the country have reached the opposite conclusion.[5] However, the issue is unsettled in the Fourth Circuit and the Court

---

[5] *See, e.g., Xgel Tech., LLC v. C.I. Kasei Co., Ltd.*, 2009 WL 1576837, at *2 (E.D. Mo. Jun. 3, 2009) (finding that "in Phelps County, Missouri" was a geographical limitation and did not waive defendants' right to remove to federal district court not physically located in Phelps County); *Priority Healthcare Corp. v. Chaudhuri*, 2008 WL 2477623, at *2 (M.D. Fla. Jun. 18, 2008) (designating venue in Seminole County did not preclude removal even though no

finds that the more persuasive authority weighs in favor of requiring dismissal. Furthermore, this decision is in line with decisions reached in the Second, Fifth, and Tenth Circuits[6] and numerous other district courts.[7]

In addition, even though the forum selection clause at issue is admittedly unclear and poorly drafted, the Court is convinced that the intent of the parties, bargaining at arm's length, was to lay venue in state court. The Court is further led to this conclusion by the fact that, as DSIC brought to the Court's attention, there is another provision in the Subcontract which provides that disputes about payment for labor, supplies, and material may be resolved through an "action for damages by Contractor against Subcontractor in any Court *of* Jackson County, North Carolina." Elaine Carter Affidavit Ex. A at 13 (emphasis added). Courts have consistently found that forum selection clauses laying venue in the courts "of" a county represent a jurisdictional restriction on venue. *See, e.g., DLX, Inc. v. Reid Bros, Inc.,* 2010 WL 1727458,

---

federal court sat in Seminole County); *Epps v. I.I.L., Inc.,* 2007 WL 4463588, at *3-4 (E.D. Pa. Dec. 19, 2007) ("court of competent jurisdiction located in Wayne County Pennsylvania" did not limit jurisdiction to state court, even if there was no federal court in the county); *Oldlaw Corp. v. Allen,* 2007 WL 2772697, at *1 (C.D. Ill. Sept. 24, 2007) (adopting recommendation which found that clause specifying venue in Scottsdale, Arizona included federal district court encompassing Scottsdale even though there was no courthouse there); *Merrell v. Renier,* 2006 WL 1587414, at *2 (W.D. Wash. Jun. 6, 2006) (term "vernue" does not necessarily equate to the location of a courthouse when clause contained no suggestion that state court must hear disputes); *Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers v. Koski Constr. Co.,* 474 F.Supp. 370, 372-73 (W.D. Pa. 1979) (clause stating venue "shall be in Erie County, Pennsylvania" held to include federal district court).

[6] *See Yakin v. Tyler Hill Corp.,* 566 F.3d 72, 76 (2d Cir. 2009) ("[W]e will effectuate the parties' commitment to trial in Nassau County. Had there been a federal court located in Nassau County at the time of this litigation, remand would have been improper. But there was none."); *Collin County v. Siemens Bus. Serv., Inc.,* 2007 WL 2908926, at *4-7 (5th Cir. 2007) (contract stated venue "shall lie exclusively in Collin County, Texas" and court ordered remand because there was no federal courthouse in Collin County); *Excell, Inc. v. Sterling Boiler & Mech., Inc.,* 106 F.3d 318, 320-21 (10th Cir. 1997) ("County of El Paso, Colorado" waived federal venue because federal system is stated in terms of districts, not counties).

[7] *See, e.g., Alliantgroup L.P. v. Feingold,* 2009 WL 514058, at *5 (S.D. Tex. Mar. 2, 2009) (when clause required venue in a county with no federal courthouse, a defendant who sued in state court in that county waived the right to remove); *Greenville Elec. Util. Sys. v. North Pac. Group, Inc.,* 2001 WL 804521, at *1-2 (N.D. Tex. Jul. 6, 2001) (defendant waived removal when clause provided that "venue for any litigation arising from this contract shall lie in Greenville, Hunt County, Texas" and there was no federal courthouse in Greenville); *Intermountain Sys., Inc. v. Edsall Constr. Co., Inc.,* 575 F.Supp. 1195, 1198 (D. Colo. 1983) ("venue shall be in Adams County, Colorado" referred only to state court). *Compare with, e.g., The London Manhattan Co. v. CSA-Credit Solutions of America, Inc.,* 2008 WL 2077554, at *2-3 (D.S.C. May 9, 2008) (defendant did not waive right to remove where clause permitted suit to be brought within the "Courts of Charleston County" because the federal court sat in Charleston County).

at *3 (E.D.N.C. Mar. 24, 2010) (citing cases). In addition, the Court considers the existence of language dictating that North Carolina law shall govern disputes between the parties to be further evidence that the intent of the contracting parties was to lay venue exclusively in state court. Though this would also be appropriate if, as attempted here, a federal court were to hear the action on the basis of diversity, the Court finds that it further alludes to the intent of the parties that disputes arising out of the matter be litigated in a state-oriented forum.[8]

Accordingly, basing its decision both on the reasoning of *Rihani* and the facts of the instant case, the Court finds that dismissal of the instant action is appropriate over transfer because the forum selection clause lays exclusive venue in the state courts of Jackson County and venue would not be proper in the Western District of North Carolina.

### ii.    Appropriateness of partial dismissal

Plaintiff also briefly argues that, even if dismissal is required, only those claims that it has clearly brought as Whitehead's assignee should be dismissed. However, Plaintiff does not make this argument with any great specificity and it occupies a mere paragraph in between its argument that the forum selection clause does not apply and its argument for transfer in lieu of dismissal. Regardless, in the interest of completeness, the Court will briefly address Plaintiff's alternative contention.

It appears to the Court that Plaintiff believes the Court has discretion to dismiss only the bond claim against DSIC, to which the Court has found the forum selection clause applies, and potentially the contract claim against AES, as to which the Court has not formally decided, leaving the two tort claims against AES here in federal court. *See* Section III.A.2.b, *supra*. As a practical matter, it would make little sense to litigate Plaintiff's tort claims in federal court while

---

[8] Though the Court otherwise disagrees with the holding in *Nahigan*, it does note that the *Nahigan* court interpreted the lack of a clause dictating that state law would govern to weigh in favor of finding that the forum selection clause was not jurisdictional and finds that portion of its holding persuasive.

19

requiring bond and/or contract claims based on the same operative facts to proceed in state court. However, nonetheless, Plaintiff cites *RK Dixon Co. v. Dealer Mktg Servs., Inc.*, 284 F.Supp.2d 1204 (S.D. Iowa 2003), for the proposition that declining to dismiss an entire case where only one claim was subject to a forum selection clause would be appropriate. AES attacked Plaintiff's construction of the *Dixon* holding in response to Plaintiff's raising of the issue, and the Court is inclined to agree with AES' reading of the case. *See* Section III.A.1, *supra. Dixon* involved an action that had been removed to federal court and implicated numerous issues regarding diversity jurisdiction as to each particular claim. Accordingly, the Court finds it unpersuasive and not directly on point in the instant case. Plaintiff also cites *Gita Sports Ltd. v. SG Sensortechnik GMBH & Co. KG*, 560 F.Supp.2d 432 (W.D.N.C. 2008), for the proposition that dismissing only some of its claims pursuant to the forum selection clause would be appropriate in this case. However, *Gita Sports* implicated the North Carolina independent tort doctrine and Plaintiff has offered no explanation as to how this might be applicable in the instant action. Accordingly, the Court is not persuaded by Plaintiff's alternative argument and finds dismissal of *all* of Plaintiff's claims as to AES and DSIC to be appropriate.

The forum selection clause lays venue exclusively in state court. Therefore, transfer to the Western District is not appropriate over dismissal. Furthermore, dismissal of only some claims is not appropriate and instead, to the extent that Plaintiff's claims are not stayed, they should be dismissed in their entirety. Accordingly, the Court recommends that (1) Mr. Henson and AES' second motion to dismiss be granted as to AES; (2) DSIC's motion to dismiss be granted; and (3) the complaint be dismissed as to AES and DSIC but remain pending as to Mr. Henson.

## B. Defendants' Motions to Dismiss pursuant to 12(b)(7)

In the alternative, Defendants argue in their motions to dismiss that Plaintiff's failure to join Whitehead as a party pursuant to Rule 19 requires dismissal of the complaint pursuant to Rule 12(b)(7). However, because, as discussed in Section III.A.2, *supra*, the Court recommends granting the motions to dismiss pursuant to Rule 12(b)(3), the issue of Whitehead's joinder need not be considered at this time.

## IV. Plaintiff's Motion to Dismiss Counterclaims

DSIC filed counterclaims against Plaintiff for recoupment, setoff, and damages in the instant action pursuant to its subrogation rights as a surety and Plaintiff moved to dismiss those counterclaims pursuant to Rule 12(b)(6) for failure to state a claim on which relief may be granted. These counterclaims appear to be related, at least in part, to the facts and circumstances of Plaintiff's underlying claims. DSIC itself notes in its briefing on the 12(b)(6) motion that "[a] ruling favorable to DSIC on [the venue] issue would render [Plaintiff]'s motion to dismiss DSIC's counterclaim moot." Memo. in Opp'n to Pl.'s 12(b)(6) Mot. to Dismiss at 4 [DE-44]. The Court construes this to be evidence of DSIC's intent to constructively abandon its counterclaims against Plaintiff should its motion to dismiss be granted. Therefore, because, as discussed in Section III.A.2, *supra*, the Court recommends dismissal of the Complaint as to DSIC, Plaintiff's motion to dismiss counterclaims need not be considered at this time.

Accordingly, the Court recommends that Plaintiff's motion to dismiss counterclaims be denied as moot and that DSIC's counterclaims against Plaintiff themselves be dismissed, without prejudice.

## V. DSIC's crossclaims and third party complaint

DSIC notes in its briefings that, if any of the defendants' motions to dismiss were to be granted by the Court, it would not object to dismissal of its own crossclaims against AES and Mr. Henson or its third party complaint against Ms. Henson, without prejudice.[9] Therefore, because, as discussed in Section III.A.2, *supra*, the Court recommends granting DSIC and AES' motions to dismiss, dismissal of DSIC's crossclaims without prejudice would be appropriate. However, because of the automatic stay in place against Mr. Henson and Ms. Henson, the crossclaims against Mr. Henson and the third party complaint against Ms. Henson must remain pending at this time.

Accordingly, the Court recommends dismissal of DSIC's crossclaims against AES, without prejudice.

## CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** the following: (1) that Mr. Henson and AES' First Motion to Dismiss [DE-18] be **DENIED AS MOOT**; (2) that DSIC's Motion to Dismiss [DE-22] be **GRANTED**; (3) that Mr. Henson and AES' Second Motion to Dismiss [DE-24] be **GRANTED** as to AES and **STAYED** as to Mr. Henson; (4) that Plaintiff's Motion to Dismiss Counterclaims [DE-28] be **DENIED AS MOOT**; and (5) Ms. Henson's Motion to Dismiss [DE-39] be **STAYED** in its entirety. Pursuant to these recommendations, the Court further **RECOMMENDS** that the Complaint [DE-1] be **DISMISSED** as to AES and DSIC, with leave to re-file in a North Carolina state court having jurisdiction over Jackson County, North Carolina. The Court further notes that the Complaint remains **PENDING** as to Mr. Henson and DSIC's Third Party Complaint [DE-14] against Ms. Henson also remains

---

[9] Specifically, DSIC writes: "In the event that this Court grants DSIC's Motion to Dismiss, DSIC does not object to the dismissal of its Crossclaim[s] and Third Party Complaint *without prejudice*." Memo. in Resp. to Defs.' AES and Henson's Second Mot. to Dismiss at 3 [DE-48].

**PENDING.** Finally, the Court **RECOMMENDS** that DSIC's crossclaims against AES and DSIC's counterclaims against Plaintiff be **DISMISSED** without prejudice.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This the 1st day of March 2011.

DAVID W. DANIEL
United States Magistrate Judge